IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BELVA GONZALES,

        Plaintiff,               No. CIV S-10-3412 EFB

    vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.         <u>ORDER</u>

_____/

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI")  under Titles II and XVI, respectively, of the Social Security Act.  The parties' cross-motions for summary judgment are pending.  For the reasons discussed below, the court grants the Commissioner's motion and denies plaintiff's motion.

I.      <u>BACKGROUND</u>

        Plaintiff formally applied for DIB and SSI on August 6, 2003, alleging that she had been disabled since September 28, 2001.  Administrative Record ("AR") 29, 48.  Plaintiff's applications were denied initially and upon reconsideration. AR 32, 40.  On October 11, 2005, a hearing was held before administrative law judge ("ALJ") Mark C. Ramsey.  *Id.* at 621.  The

1  ALJ's April 26, 2006 decision found that plaintiff was not disabled under 216(I), 223, 1602, and

2  1614(a)(3)(A) of the Act.[1]  *Id.* at 17-23.  The Appeals Council denied plaintiff's request for

3  review on November 2, 2007.  *Id.* at 7-9.

4          Plaintiff appealed the ALJ's decision to the United States District Court for the Eastern

5  District of California.  *Gonzales v. Comm'r of Soc. Sec.*, No. Civ. S-08-0223 GGH.  The case

6  was remanded for further proceedings per the parties' stipulation.  AR 681-682.  The district

7  court's order directed that the ALJ address the third-party statements of Arthur Gonzales, to

8  evaluate plaintiff's subjective complaints, properly evaluate all medical evidence in the record,

9  consult a vocational expert regarding the effect plaintiff's assessed limitations have on the

10  occupational base, associate plaintiff's subsequent application,[2] and develop the record as

11

12          [1] Disability Insurance Benefits are paid to disabled persons who have contributed to the
Social Security program, 42 U.S.C. §§ 401 *et seq.*  Supplemental Security Income is paid to

13  disabled persons with low income.  42 U.S.C. §§ 1382 *et seq.*  Both provisions define disability,
in part, as an "inability to engage in any substantial gainful activity" due to "a medically

14  determinable physical or mental impairment. . . ."  42 U.S.C. § 1382c(a)(3)(A).  A five-step
sequential evaluation governs eligibility for benefits under both programs.  *See* 20 C.F.R.

15  §§ 404.1520, 404.1571-76, 416.920 and 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42
(1987).  The following summarizes the sequential evaluation:

16          Step one:  Is the claimant engaging in substantial gainful activity?  If so,
the claimant is found not disabled.  If not, proceed to step two.

17          Step two:  Does the claimant have a "severe" impairment?  If so, proceed
to step three.  If not, then a finding of not disabled is appropriate.

18          Step three:  Does the claimant's impairment or combination of
impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P,

19  App.1?  If so, the claimant is automatically determined disabled.  If not, proceed
to step four.

20          Step four:  Is the claimant capable of performing his past work?  If so, the
claimant is not disabled.  If not, proceed to step five.

21          Step five:  Does the claimant have the residual functional capacity to
perform any other work?  If so, the claimant is not disabled.  If not, the claimant

22  is disabled.
*Lester v. Chater,* 81 F.3d 821, 828, n.5 (9th Cir. 1995).

23          The claimant bears the burden of proof in the first four steps of the sequential evaluation
process.  *Bowen*, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential

24  evaluation process proceeds to step five.  *Id.*

25          [2] The Commissioner's final decision explains that plaintiff filed a subsequent claim for a
period of disability and DIB on September 7, 2007.  This claim, however, was dismissed on May

26  22, 2009 as a duplicate claim.  The remand order directed the ALJ to associate the claim files

2

1  needed. *Id.*

2      Pursuant to the district court's order, the ALJ held a subsequent hearing on November 16,

3  2009. *Id*. at 1117.  Plaintiff was represented by counsel at the hearing, at which she and a

4  vocational expert ("VE") testified.  *Id*. at 1117-1159.  The ALJ issued a decision on February 3,

5  2010, again finding that plaintiff was not disabled from September 28, 2001 through the date of

6  the decision.  *Id*. at 658-673.  The ALJ made the following specific findings:

7      1.  The claimant meets the insured status requirements of the Social Security Act
        through September 30, 2004.
8
        2.  The claimant has not engaged in substantial gainful activity since September
9       28, 2001, the alleged onset date (20 CFR 404.1571 *et seq.*).

10      3.  The claimant has the following severe impairments: residuals from a brain
        aneurysm or stroke, cognitive impairment and depression (20 CFR 404.1520©).
11
        ...
12
        4.  The claimant does not have an impairment or combination of impairments that
13      meets or medically equals one of the listed impairments in 20 CFR Part 404,
        Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
14
                ...
15
        5.  After careful consideration of the entire record, the undersigned finds that the claimant
16      has the residual functional capacity to perform light work as defined in 20 CFR
        404.1567(b) and 416.967(b) except she can perform no repetitive fine i.e. fingering
17      manipulation with the left dominant hand and arm.  She cannot write, but can lift and
        carry with her non-dominant right arm and hand.  The claimant needs to be able to
18      change position every 15-20 minutes for 1-2 minutes of movement about or around her
        work station.  She can only perform simple repetitive tasks i.e. unskilled work.
19
        ...
20
        6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and
21      416.965).
22
        ...
23
        7.  The claimant was born [in] 1964 and was 37 years old, which is defined as a
        younger individual age 18-49, on the alleged disability onset date (20 CFR
24      404.1563 and 416.963).
25
    _____

26  from this duplicate claim.

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can performed (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

...

11.  The claimant has not been under a disability, as defined in the Social Security Act, from September 28, 2001 through the date of this decision (20 CFR 404.1520(g) and 416.920(g).

*Id.* at 661-73.

The Appeals Council denied plaintiff's request for review on October 21, 2010, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. *Id.* at 648-650.

II.  LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is more than a mere scintilla, but less than a preponderance.  *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996).  "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical

1    testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.

2    2001) (citations omitted).  "Where the evidence is susceptible to more than one rational

3    interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

4    *Thomas v. Barnhart*, 278  F.3d 947, 954 (9th Cir. 2002).

5    III.  <u>ANALYSIS</u>

6         Plaintiff argues that the ALJ erred in 1) failing to provide legally sufficient reasons for

7    rejecting plaintiff's treating physician's opinion; 2) failing to credit plaintiff's testimony and

8    third-party statements; and 3) failing to credit the VE's testimony in response to a hypothetical

9    that reflects plaintiff's functional limitations.

10         A.      <u>The ALJ Provided Legally Sufficient Reasons for Rejecting the Opinions of<br>Plaintiff's Treating Physicians</u>

11

12         Plaintiff argues that the ALJ erred by rejecting the medical opinions of plaintiff's treating

13    physicians without providing legitimate reasons.  The weight given to medical opinions depends

14    in part on whether they are proffered by treating, examining, or non-examining professionals.

15    *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996).  Ordinarily, more weight is given to the

16    opinion of a treating professional, who has a greater opportunity to know and observe the patient

17    as an individual.  *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1295 (9th Cir. 1996).  To evaluate

18    whether an ALJ properly rejected a medical opinion, in addition to considering its source, the

19    court considers whether (1) contradictory opinions are in the record; and (2) clinical findings

20    support the opinions.  An ALJ may reject an uncontradicted opinion of a treating or examining

21    medical professional only for "clear and convincing" reasons.  *Lester*, 81 F.3d at 831.  In

22    contrast, a contradicted opinion of a treating or examining professional may be rejected for

23    "specific and legitimate" reasons, that are supported by substantial evidence.  *Id.* at 830.  While a

24    treating professional's opinion generally is accorded superior weight, if it is contradicted by a

25    supported examining professional's opinion (e.g., supported by different independent clinical

26    findings), the ALJ may resolve the conflict.  *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir.

1   1995) (*citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  However, "[w]hen an

2   examining physician relies on the same clinical findings as a treating physician, but differs only

3   in his or her conclusions, the conclusions of the examining physician are not 'substantial

4   evidence.'"  *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

5               1.   Dr. Kingsley

6          Dr. Kingsley was one of plaintiff's treating physicians.  On January 14, 2004, Dr.

7   Kingsley completed a Medical Report form for the Department of Social Services in Shasta

8   County.  AR 1056.  Dr. Kingsley checked a box indicating that plaintiff was permanently

9   disabled and stated that plaintiff had decreased stamina and weakness on her left side.  *Id*.  On

10  January 11, 2005, Dr. Kingsley completed the same form, again checking the box indicating that

11  plaintiff was permanently disabled.  *Id*. at 246.  Dr. Kingsley also stated that plaintiff was limited

12  in her ability to stand or sit for any length of time due to pain and weakness in her left leg and

13  arm.  *Id*.

14         On May 8, 2008, plaintiff was examined by Dr. Kingsley.  Dr. Kingsley opined that in

15  order for plaintiff to work she would likely need reduced hours and frequent breaks to stretch

16  and change positions.  *Id*. at 960.  Dr. Kingsley further opined that concentration would be an

17  obstacle.  *Id*.  The record also contains a letter Dr. Kingsley wrote requesting that plaintiff be

18  excused from jury duty because she is unable to sit for a prolonged period of time.  *Id*. at 903.

19         In addition to Dr. Kingsley's opinions, the record contains the medical opinions of Dr.

20  Sanford Selcon, an examining physician.  Dr. Selcon examined plaintiff on October 13, 2003,

21  and opined that plaintiff had no sitting limitations, could stand/walk for 6 hours in an 8-hour day

22  and lift/carry without limitations.  *Id*. at 135.  He further opined that plaintiff would have some

23  manipulative limitations effecting plaintiff's fine motor movements of the left hand.  *Id*.

24  ////

25  ////

26

6

1    The record also contains a September 2004 Residual Functional Capacity form completed

2  by a state agency non-examining physician.[3]  *Id*. at 192-201.  The state agency physician opined

3  that plaintiff could lift 20 pounds occasionally and 10 pounds frequently, stand/walk for 6 hours

4  in an 8-hour day with 1-2 minute breaks every hour, sit 6 hours in an 8-hour day, and had limited

5  capacity with her lower extremities with pushing/pulling.  *Id*. at 193.  The physician also opined

6  that plaintiff could frequently perform most postural actions, but was occasionally limited in

7  climbing.  *Id*. at 194.

8    Plaintiff argues that the ALJ simply ignored Dr. Kingsley's 2004 and 2005 medical

9  opinion that plaintiff was disabled and therefore failed to provided legally sufficient reasons for

10  rejecting this opinion.  Dckt. No. 20 at 33.  "'Although a treating physician's opinion is

11  generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect

12  to the existence of an impairment or the ultimate determination of disability.'"  *Ukolov v.*

13  *Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005) (quoting *Batson v. Comm'r of Soc. Sec. Admin.*,

14  359 F.3d 1190, 1195 (9th Cir. 2004)); *see also* 20 CFR § 404.1527(e) ("A statement by a

15  medical source that you are 'disabled' or 'unable to work' does not mean that we will determine

16  that you are disabled.").  Thus, an ALJ is not obligated to provided detailed reasons for rejecting

17  a medical expert's opinion regarding the ultimate question of disability.  *Nyman v. Heckler*, 779

18  F.2d 528, 531 (9th Cir. 1985).  Dr. Kingsley's opinion that plaintiff was disabled regarded the

19  ultimate issue of disability, a determination that is reserved for the ALJ.  Therefore, the ALJ was

20  not required to provide a detail explanation for rejecting this opinion.

21    Plaintiff also argues that the ALJ failed to provide legally sufficient reasons for rejecting

22  Dr. Kingsley's 2008 opinion that plaintiff required reduced work hours.  Dckt. No. 20 at 33-35.

23  Dr. Kingsley's opinion that plaintiff would require reduced work hours was contradicted by Dr.

24  Selcon's opinions that plaintiff had no sitting limitations, could stand/walk for 6 hours in an 8-

25

26    [3]  The form does not clearly contain the name of the consulting physician providing the opinion.

1  hour day, and could lift/carry without limitations.  *Id*. at 135.  Thus, the ALJ was required to

2  give specific and legitimate reasons for rejecting Dr. Kingsley's opinion.  Here, he did so.

3      The ALJ stated that he rejected Dr. Kingsley's opinion that plaintiff required reduced

4  work hours because it was unsupported by the medical records overall.  *Id*. at 668.   In discussing

5  plaintiff's medical records, the ALJ cited to exhibit B29F, which contains plaintiff's medical

6  records from The Shasta Community Health Center.  The ALJ wrote the following summary of

7  plaintiff's medical records:

8      The Shasta Community Health Center records of 2/5/2008 through 9/2/2009 evidence the
       claimant's regular contact with her treating source for refills of her medications to
9      address headaches, chronic left arm and leg pain.  She takes Topomax for migraine
       prevention; Darvocet, Motrin and Neurontin to relieve pain.  Physical exams show the
10     claimant to be healthy, with no abnormal findings. . . . Dr. Jolene Kinglsey's [*sic*]
       psychiatric findings are routinely normal affect, thought content, and speech appropriate.
11     Her musculoskeletal findings are regularly no atrophy or deformities, "slight weaker on
       left lower extremity", no cyanosis/clubbing/or edema, nor tremor, negative Holman's
12     sign for deep venous thrombosis, but some diffuse tenderness to light palpation in the left
       arm and leg.  Once there was tightness of the spine decreasing flexibility.  Her
13     neurological findings are consistently grossly normal intellect, alert and oriented x4 i.e
       aware of person, place, time and situation with sensation intact, and normal gait without
14     obvious limp.  Once she noted reflexes were difficult to illicit.  Twice her notes indicate
       that right upper extremity and lower extremity had 5/5 strength, i.e. normal, while left
15     upper extremity and lower extremity is 4/5 strength with slightly to no
       antalgic/asymmetric gait, no facial droop, normal reflexes.  Overall, this record fails to
16     demonstrate the claimant suffering significantly intense, persistent, limiting symptoms.

17     There is a single reference to a history of depression in these records, but otherwise they
       contain no complaint regarding psychological issues nor any prescribed medications for
18     treatment of the same.  There are no referrals for counseling, therapy, evaluations by
       mental health specialist, nor evidence of hospitalizations for crises in mental symptoms,
19     nor psychiatric hospitalization. (B29F)

20  ////

21  ////

22  ////

23  ////

24  ////

25  ////

26  ////

Additionally, one finds no complaints of fatigue in these records.[4]  The consistent complaint is chronic pain and weakness in the left arm and leg, restless leg syndrom i.e. intermittent shaking of the leg muscles which interrupts sleep, for which she tries [*sic*] Mirapex samples in May, 2008, which appears to help as the claimant continues on this medication into 2009.

Continuing our close review of the Shasta Community Health Center Records of 2/5/2008 through 9/2/2009 we see some evidence of referral to a specialist, something that might suggest the claimant's symptoms are more severe than can be handled by a primary care physician.  We find notes of a referral to a rheumatologist in 2008 and 2009.  (B29F/43-44, 48) The notes suggest this referral does not appear to ever happen due to the fact there were no abnormalities on rehumatoid labs in 2006-7, nor x-rays of the lumbar spine and leg and hips from 2004 and 2005, all of which appear to be condition precedent to being seen by such a specialist.  (See normal lab, xray [*sic*] report, May 10, 2007, B19F/2; normal hip x-ray October 28, 2005 B19F/42; normal lumbar spine and left ankle/foot x-rays November 1, 2004 B16F/26) The records also evidence that the claimant informs her treating source that she had a nerve condition study done by [a] neurologist, Dr. Rabiee[,] which revealed no nerve damage.  The notes indicate that since the claimant is doing well on Topamax for migraines, left sided pains and Mirapex for restless leg syndrome, so that she only sometimes needs Darvocet---- no further reference out to specialist made.  (B29F/35-36) Labs as of May 17, 2009 were normal.  (Id. 15) But efforts were made to set up a referral to a neurologist in the summer of 2009 which did not go through as the claimant never returned their messages.  (B29F/7 (7/28/2009))  Overall this information in the clinical records suggests that the routine and conservative treatment received by the claimant for her condition was all that was warranted; that it was not so severe as to necessitate evaluation or treatment by specialist.  Or that, in the instance of claimant not following through on a referral, her symptoms are not as serious as alleged, and are well controlled by the medication.

AR 665-66.

The ALJ also discussed plaintiff's earlier medical records.  The ALJ wrote:

The Shasta Community Health Center (SCHC) records of November 3, 2004 through May 10, 2007 and July 16, 2007 to January 23, 2008, evidence substantially similar information on the claimant's complaints, the results of her physical exams, and again, the fact that most records relate to refilling prescriptions.  (B19F, B26F) There are only occasional examination reports evidencing muscle spasms, or left positive straight leg

---

[4]  In her motion, plaintiff states "the ALJ was simply wrong when he asserted that 'one finds no complaints of fatigue' in the medical records."  Dckt. No. 20 at 34.  To support this argument, plaintiff cites a treatment note from June 18, 2004 that specifically states that plaintiff "complains of fatigue mostly on the left side of the body."  *Id*.  Plaintiff misstates the ALJ language.  The ALJ specifically states that "these" records contain no complaints of pain during his discussion of plaintiff's medical records from February 5, 2008 through September 2, 2009.  The ALJ statement was not referencing all of plaintiff's medical records, but was merely limited to those records he was discussing.  Since the ALJ was only referencing medical records made after February 5, 2008, plaintiff's reference to a treatment note dated June 18, 2004 fails to show that the ALJ's statement was incorrect.

raise.  (B19F/16 8/28/2006; B19F/25 2/21/2006) Moving on to the earlier records from 2004 and 2005 clinical notes document complaints being addressed by the use of diagnostic testing and image scanning already related above, seeking physical therapy . . ., changing and adjusting medications, acquiring orthotic shoes and brace.  (B10F, B16F and B19F) However even in these earlier years the physical exams reveal the claimant's left leg weakness to be slight: it is slightly weak 5-/5 or 4/5 motor strength, subtle left drift, sensory examination within normal limits, ambulates with very minimal weakness of the left leg, toes and heels normal, no ataxia or dysmetria i.e inability to normally control movement, Romberg Test normal. (B10F/1 6/182004; B10F/4 3/22/2004; and B10F/7 2/3/2004) These clinical findings, when considered in light of those from later years substantiate the minimal nature of, and impact upon her functionality by her impairments.

...

These earlier records also demonstrate little to no evidence to substantiate complaints of or treatment for fatigue - it is non-issue.

*Id*. at 666-67.

The ALJ also discussed plaintiff's records for physical theory, which was undertaken March 20, 2005 through August 17, 2005.  A discharge summary stated that although plaintiff's attendance was inconsistent, plaintiff progressed significantly over the course of her therapy.  *Id*. at 264.  The summary specifically stated that "[plaintiff] feels her symptoms are 100% resolved in day to day activities and only has minor difficulty with" her normal base of support.  *Id*.

After discussing the medical evidence, the ALJ concluded that plaintiff's medical record did not support Dr. Kingsley's opinion that plaintiff required reduced work hours.  Plaintiff contends, however, that the ALJ erred in reaching this determination because there is evidence in the record that plaintiff's ruptured aneurysm and stroke caused plaintiff to experience fatigue and weakness. Dckt. No. 20 at 34.  Plaintiff specifically cites to a June 18, 2004 treatment note which states that plaintiff "complains of fatigue mostly on the left side of her body. . . ."  AR 1047.

An ALJ may properly reject a treating physician's opinion if it is "brief, conclusory, and inadequately supported by clinical findings."  *Barnhart*, 278 F.3d at 957.  Here, the ALJ examined and weighed the medical evidence in the record and concluded that Dr. Kingsley's opinion that plaintiff required reduced hours was not supported by the medical records overall.

1    In making this determination, the ALJ stated that there was no clinical findings that plaintiff

2    experienced fatigue.  AR 667.  While the record is replete with medical findings that plaintiff

3    experienced weakness with her left extremities, the ALJ observed that plaintiff's physicians

4    consistently found that the weakness to plaintiff's left extremities were not significant.  *Id*. at

5    798, 817, 872, 917, 933, 960, 1047, 1050.  Indeed, Dr. Kingsley even wrote that plaintiff "seems

6    slightly weaker on left lower extremity."  *Id*. at 960.  Although there may be some evidence

7    documenting plaintiff's subjective complaints of fatigue, that does not indicate that the ALJ

8    unreasonably determined that Dr. Kingsley's opinion was unsupported by the overall record.[5]

9    The ALJ is required to weigh all the evidence and "[w]hen evidence reasonably supports either

10   confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the

11   ALJ."  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).  Here, the

12   medical evidence discussed by the ALJ supports his finding that there was little to no evidence

13   of fatigue.  This finding supported the ALJ's rejection of Dr. Kingsley's opinion that plaintiff

14   requires reduced work hours.[6]  The ALJ did not error in rejecting Dr. Kingsley's medical

15   opinion.

16   ////

17   ////

18   ////

19   ////

20   ////

21   

---

22       [5]  Plaintiff also cites to a stroke fact sheet to support her position that she experienced
     fatigue.  Dckt. No. 20-1.  The fact sheet states that tiredness is common in stoke victims.  *Id*.
23   This document, however, does not prove that plaintiff experienced fatigue as a result of her
     stroke or explain the lack of clinical findings or minimal documentation of plaintiff's fatigue in
24   her medical records.

25       [6] The ALJ also rejected Dr. Kingsley's opinion because it was inconsistent with
     plaintiff's description of her daily activities.  The undersigned does not consider this
26   justification, as the opinion was properly rejected as unsupported by the overall medical record.

1

2.    <u>Dr. Busey</u>

2       Plaintiff was evaluated by Dr. Busey on October 10, 2007.[7]  Based on psychological

3 testing, Dr. Busey opined that plaintiff "could possibly do low-level, repetitive non-intellectual

4 work that didn't require much memory ability," but that her physical condition precluded her

5 from performing such work.  AR 838.  He further opined that even if her physical condition did

6 not preclude her from performing such work, her inability to inhibit her emotions and

7 vocalizations would prevent her from maintaining a job.  *Id.*

8       Dr. Busey also completed a Short-Form Evaluation for Mental Disorders on October 10,

9 2007.  *Id*. at 829-841.  He opined that plaintiff had a good ability to respond appropriately to

10 changes in a work setting.  *Id*. at 841.  He further opined that plaintiff had a fair ability to

11 understand, remember, and carry out simple instructions; perform activities within a schedule

12 and maintain regular attendance; and complete a normal workday and workweek without

13 interruptions from psychologically based symptoms.  *Id.*  He also opined that plaintiff had poor

14 abilities to understand, remember, and carry out complex instructions and maintain

15 concentration, attention and persistence.  *Id.*

16       The record also contains the opinion of Dr. David Richwerger, an examining

17 psychologist.  In October 2003, Dr. Richwerger examined plaintiff and opined that she had no

18 impairment in her ability to perform simple and repetitive work, perform work activities on a

19 consistent basis, perform work activities without special supervision, understand and accept

20 instructions from supervisors, and maintain regular attendance in the work place.  *Id*. at 129.  He

21 also opined that plaintiff had only slight impairments in performing detailed and complex tasks,

22 completing a normal workday or workweek without interruption from a psychiatric condition,

23

24      [7]  It is not entirely clear from the record whether Dr. Busey was plaintiff's treating
physician.  The ALJ considered Dr. Busey a treating physician, but the ALJ also noted that Dr.
25 Busey admits in his report that he was plaintiff's husband's regular psychologist.  AR 670-71,
837.  The distinction is not critical because, as discussed herein, the ALJ provided clear and
26 convincing reasons for rejecting Dr. Busey's opinion.

1  interacting with the public and coworkers, and dealing with the usual stresses of competitive

2  work.

3         Dr. Richwerger evaluated plaintiff again in October 2004.  Dr. Richwerger opined that

4  plaintiff had no impairments in her ability to perform simple and repetitive tasks, perform work

5  activities without special supervision, interact with coworkers and the public, maintain regular

6  work attendance in the workplace.  *Id.* at 228.  He further opined that plaintiff had slight

7  impairments in her ability to perform work activities on a consistent basis, complete a normal

8  workday or workweek without interruption from a psychiatric condition, understand and accept

9  instructions from supervisors, and deal with the usual stresses of competitive work, but was

10 moderately impaired in her ability to perform detailed and complex tasks.  *Id.*

11        The record also contains state agency psychiatric or psychological examinations.  On

12 October 16, 2003, Dr. Rosemary Tyl , a non-examining physician, opined that plaintiff was only

13 moderately limited in her ability to carry out detail instructions.  *Id.* at 142-56.  In October 2004

14 another consulting physician opined that plaintiff was only moderately limited in her ability to

15 understand, remember, and carry out detailed instructions.  *Id.* at 202-18.[8]

16        The ALJ gave little weight to portions of Dr. Busey's opinion.  The ALJ rejected Dr.

17 Busey's opinions that plaintiff: 1) had a physical impairment that precluded her from working, 2)

18 was prone to outbursts of temper, and 3) had a poor ability to maintain concentration, attention,

19 and persistence.  *Id.* at 670-71.  Plaintiff only challenges the ALJ's rejection of Dr. Busey's

20 opinion that plaintiff had a poor ability to maintain concentration, attention, and persistence.

21 Dckt. No. 20 at 35-37.  In rejecting this opinion, the ALJ wrote:

22 *////*

23

24      [8]  The record also contains two Psychiatric Review Technique forms from November 6,
        2007 and May 16, 2008.  Both forms simple state there is insufficient evidence to find that
25      plaintiff had organic brain disorder or affective mood disorder prior to the date last insured,
        which they stated was in 2002.  *Id.* at 844-54, 885-96.  The ALJ disregarding these opinions "as
26      inconsistent with the findings of Dr. Richwerger, as apparently based upon a misunderstanding
        of the date last insured."  *Id.* at 669.

> And his opinion that the claimant's capacity to maintain concentration, persistence and pace is poor does not appear to be supported by other evidence of record nor his own diagnostic findings, and appears to contradict his statement finding the claimant capable of simple repetitive tasks i.e. unskilled work, sustaining a normal workday and work week without interruption from psychological symptoms and capable of performing activities within a schedule and maintain regular attendance.
>
> The claimant's activities of daily living are also inconsistent with his findings regarding her ability to maintain concentration, persistence and pace.  She reports or testifies that she was able to sustain two semesters of sign language classes in 2003, does puzzles, reads the paper daily and a book a month, can follow mysteries, thrillers and sci-fi movies, as well as attend movies.  Each of these activities shows an ability to focus, concentrate and to sustain that effort for a reasonable period of time, all functionalities which suggest her capacities of concentration, persistence and pace are not as limited as alleged.

AR 670.

Plaintiff argues that Dr. Busey's finding regarding plaintiff's concentration, attention, and persistence was not inconsistent with his own statements.  Plaintiff specifically contends that "Dr. Busey never made a definitive statement that Ms. Gonzales was capable of performing simple repetitive tasks in a competitive work setting."  Dckt. No. 20 at 36.  According to plaintiff, Dr. Busey merely speculated that plaintiff might be able to perform a low-level job that required minimal memory demands and that plaintiff could possibly do repetitive non-intellectual work that requires minimal memory ability.  Plaintiff is simply wrong.  The Short-Form Evaluation for Mental Disorders contains Dr. Busey's opinion that plaintiff has a poor ability to maintain concentration, attention and persistence.  AR 841.  This same form also contains Dr. Busey's opinions that plaintiff has a fair ability to understand, remember, and carry out simple instructions, perform activities within a schedule and maintain regular attendance, and complete a normal workday and workweek without interruptions from psychologically based symptoms.  *Id*.  The ability to carry out simple tasks and perform activities within a schedule requires some level of concentration and attention.  Because Dr. Busey's opinion regarding plaintiff's concentration was contradicted by his statements that plaintiff can perform simple repetitive tasks, sustain a normal workday and work week, and perform activities within a schedule, the ALJ did not err by rejecting his opinion.  *See Bayliss v. Barnhart*, 427 F.3d 1211,

1216 (9th Cir. 2005) (presence of internal inconsistences is a clear and convincing reason for

rejecting a treating physician's medical opinion).

The ALJ also observed that plaintiff's activities of daily living were inconsistent with Dr.

Busey's opinion that plaintiff had poor ability to maintain concentration, attention, and

persistence. *Id*. at 670. As noted above, the ALJ observed that plaintiff completed a sign

language course, does puzzles, reads the paper daily and a book a month, and watches movies.

Plaintiff does not challenge the ALJ's finding that "[e]ach of these activities shows an ability to

focus, concentrate and to sustain that effort for a reasonable period of time, all functionalities

which suggest her capacities of concentration, persistence and pace are not as limited as

alleged." *Id*. at 670. Thus, the ALJ provide legally sufficient reasons justifying his rejection of

Dr. Busey's opinion that plaintiff had poor ability to maintain concentration, attention, and

persistence.

B.       The ALJ Properly Rejected Portions of Plaintiff's Testimony and Third Party
         Statements

Plaintiff argues that the ALJ failed to provide legally sufficient reasons for rejecting her

testimony. In evaluating whether subjective complaints are credible, the ALJ should first

consider objective medical evidence and then consider other factors. *Bunnell v. Sullivan*, 947

F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment,

the ALJ then may consider the nature of the symptoms alleged, including aggravating factors,

medication, treatment and functional restrictions. *See id*. at 345-47. The ALJ also may consider:

(1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent

testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a

prescribed course of treatment, and (3) the applicant's daily activities. *Smolen v. Chater*, 80 F.3d

1273, 1284 (9th Cir. 1996); *see generally* SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR

55406-01; SSR 88-13. Work records, physician and third party testimony about nature, severity

and effect of symptoms, and inconsistencies between testimony and conduct also may be

relevant. *Light v. Social Security Administration*, 119 F.3d 789, 792 (9th Cir. 1997).  A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment. *See Flaten v. Secretary of HHS*, 44 F.3d 1453, 1464 (9th Cir. 1995).  The ALJ may rely, in part, on his or her own observations, *see Quang Van Han v. Bowen*, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. *Marcia v. Sullivan*, 900 F.2d 172, 177 n.6 (9th Cir. 1990).  "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ stated that he rejected plaintiff's testimony regarding the severity of her impairments because plaintiff's daily activities were inconsistent with the degree of impairments plaintiff alleges.  AR 662-63, 665, 670.  The ALJ observed that plaintiff's allegations regarding her fatigue and inability to concentrate are not consistent with her activities of daily living. *Id*. at 663, 667, 670.  In discussing plaintiff's daily activities, the ALJ wrote:

> Her activities of daily living consist of caring for herself, watching TV, listening to the radio, doing laundry, cleaning bathroom and kitchen, vacuuming, dusting while her husband changes the sheets, mops, scrubs the tub, and cooks with her help.  All chores are done with rest breaks.  She grocery shops a couple of times a month for an hour or more.  While she does not do yard work, she had a small garden which she weeds and waters.  She reported that she has friends over for dinner, or goes to friends for dinner once or twice a month, goes to the movies once a month, camping once a year, and fishes.  She walks for exercise 10-15 minutes at a time, 1-2 times a week.  She likes to read and do puzzles, make magnets.  She stopped driving a year ago.  In 2003 the claimant attended sign language two days a week for two hours a day, but her left hand difficulties ultimately ended this goal.  The claimant has been with her boyfriend/husband for more than twenty years, socialized with family and friends, and testified that she usually gets along with others and authority figures.  Overall the claimant successfully maintains a long term relationship, as well as friendships and family relations, and describes activities of daily living, all of which are not restricted to the extent one would expect, given the complaints of disabling symptoms and limitations. . . .
>
> With regard to concentration, persistence or pace, the claimant has moderate difficulties.  The claimant testified that she is unable to concentrate for long periods of time, has difficulty following complicated recipes, sometimes instructions and has memory problems.  The testing performed by Dr. Busey . . . would also substantiate some limitations in this domain.  However in her activities of daily living questionnaire,

16

1    September 26, 2003, the claimant indicated she can take medications without reminders,
2    likes to read the paper every day and a book a month, do puzzles (medium skill level per
     husband), watch mysteries, thrillers or sci-fi programs, and goes to the movies about once
3    a month.  All of these activities indicate her capacity to attend, focus, concentrate and
     persist in that effort are not as substantially diminished as alleged.  (B4E, B5E, B18E)

4    AR 662-63.

5         The ALJ identified specific evidence in the record that supports his finding that

6    plaintiff's daily activities are inconsistent with the severity of her alleged impairments.  Plaintiff

7    argues, however, that her description of her daily activities was far more limited than those

8    described by the ALJ.  Dckt. No. 39-41.  For example, plaintiff points out that although she

9    testified that she enjoys doing crafts, she stated that she could only do them for 15-20 minutes

10   because her hand gets tired.  *Id.* at 637.  While portions of plaintiff's testimony may support her

11   allegations regarding her impairments, other statements regarding her daily activities indicate

12   that her impairments were not as severe as she alleges.  For example, the ALJ correctly noted

13   that plaintiff went camping and fishing every year.  *Id.* at 1125.  Though she required breaks,

14   plaintiff was able to perform work around the house and go grocery shopping with her husband.

15   1122-24.  This evidence supports the ALJ's finding that plaintiff's fatigue was not as severe as

16   alleged.  Plaintiff was also able to take a sign language course, read the paper and books, and do

17   puzzles, evidence that supports the ALJ's finding that plaintiff had the ability to concentrate.

18        Although plaintiff's testimony contained some evidence conflicting with the ALJ's

19   determination, that does not indicate that the ALJ was wrong.  It simply shows that there is more

20   than one reasonable interpretation of the evidence.  "Where the evidence is susceptible to more

21   than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion

22   must be upheld."  *Barnhart*, 278  F.3d at 954.  The ALJ cited to evidence that supported his

23   determination that plaintiff's daily activities were inconsistent with the alleged severity of her

24   impairments.  Because the ALJ's interpretation was reasonable and supported by substantial

25   evidence, this court may not second-guess the ALJ's findings.  *See Rollins v. Massanari*, 261

26   F.3d 853, 857 (9th Cir. 2001).  Accordingly, the ALJ did not err in rejecting portions of

17

1    plaintiff's testimony.[9]

2           Plaintiff also argues that the ALJ did not sufficiently justify his rejection of Arthur

3    Gonzales's statements.  An ALJ may not reject the opinions of a lay witnesses without providing

4    reasons that are germane to each witness.  *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685,

5    693-94 (9th Cir. 2009).  Mr. Gonzales's statements regarding plaintiff's subjective complaints

6    were similar to the testimony plaintiff provided.  *Id*. at 74-80, 721-728, 774-750, 782-83.  The

7    ALJ rejected Mr. Gonzales's statements, at least in part, on the same grounds that he rejected

8    plaintiff's testimony – that his statements were not consistent with plaintiff's activities of daily

9    living.  *Id*. at 671.  Given that the ALJ gave legally sufficient reasons for rejecting plaintiff's

10   testimony regarding her subjective complaints and that Mr. Gonzales's statements merely

11   substantiated such complaints, it follows that the ALJ provided a germane reason for discrediting

12   Mr. Gonzales's statements.  *See Valentine*, 574 F.3d at 694 ("In light of our conclusion that the

13   ALJ provided clear and convincing reasons for rejecting [plaintiff's] own subjective complaints,

14   and because [lay witness's] testimony was similar to such complaints, it follows that the ALJ

15   also gave germane reasons for rejecting her testimony.").  Thus, the ALJ did not err in failing to

16   credit Mr. Gonzales's testimony.

17           C.      The ALJ Did Not Err in Failing to Credit the VE Testimony

18           Plaintiff argues that the ALJ committed prejudicial error by failing to credit the VE's

19   testimony in response to a hypothetical that accurately included plaintiff's functional limitations.

20   This argument is based on plaintiff's contention that the ALJ's RFC assessment did not include

21   Dr. Kingsley's opinion that plaintiff required reduced hours, Dr. Busey's opinion that plaintiff

22

23           [9] The ALJ also found that the record suggests that plaintiff received conservative
     treatment, which suggested that plaintiff's condition was not severe enough to warrant
24   evaluation by a specialist.  AR 666.  The ALJ also stated that "in the instance of claimant not
     following through with a referral [to a specialist], her symptoms are not as serious as alleged
25   . . . ."  Plaintiff contends that she was not treated by a specialist because she did not have
     insurance, not because her medical condition did not warrant treatment by a specialist.  Dckt.
     No. 20 at 41-42.  The court need not address this argument, as the undersigned finds that the ALJ
26   provided other legitimate reasons for discrediting plaintiff's testimony.

1    had poor ability to maintain concentration, and plaintiff's testimony that she fatigued easily.  As

2    explained above, the ALJ did not err in rejecting this evidence.  Accordingly, the ALJ was not

3    required to credit the VE's response to a hypothetical that included such limitations.

4    IV.  CONCLUSION

5         The court finds that the ALJ's decision is supported by substantial evidence and is based

6    on the proper legal standards.  Therefore, IT IS ORDERED that:

7         1.  Plaintiff's motion for summary judgment is denied;

8         2.  The Commissioner's cross-motion for summary judgment is granted; and

9         3. The Clerk is directed to enter judgment in the Commissioner's favor and close the

10   case.

11   DATED:  March 30, 2012.

12                                EDMUND F. BRENNAN
                                 UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26